## H. WILLIAM BROOKS, Appellant, v. NEVADA FIRST THRIFT, Respondent.

### No. 17400

March 31, 1987                                        734 P.2d 730

*Wayne Chimarusti,* Carson City, for Appellant.

*Paul Freitag,* Sparks, for Respondent.

## OPINION

*Per Curiam:*

This case is a controversy over the ownership of a Nevada First Thrift (NFT) savings certificate. NFT filed an interpleader action seeking a declaration as to ownership between two claimants, appellant Brooks and his aunt, Maria Meyer-Kassel, who is now represented by Rodlin Goff, executor of Maria's estate.

Brooks counterclaimed in the interpleader action claiming that he was the owner of the certificate. Later Brooks filed an independent action in which he claimed: first, that Maria's "removing Plaintiff's [Brooks'] name from the First Federal Savings certificate" was the result of coercion; second, that Maria's "transferring" of the certificate "to an account held in her name" created a co-tenancy to which Brooks was entitled to one-half; third, that Brooks was a surviving joint tenant in the certificate; fourth, that coercion by a third party negated any effort on

the part of Maria to change the certificate to her name; and, fifth, that even if the joint tenancy were terminated, Brooks was a tenant in common.

The trial court concluded that no coercion or undue influence was involved, that Maria intended to keep the account (comprised of money entirely derived from her own resources), and that therefore the court could effectuate this intent notwithstanding NFT's "failure to complete the paperwork" required by its internal procedures to effectuate the transfer and elimination of Brooks from the account.

It is necessary for an understanding of this opinion to review the factual backdrop of this controversy.

Brooks, Maria's nephew, was raised by Maria from shortly after his birth. The two had lived together in Maria's home in Genoa for most of Brooks' life up until the time of Maria's death.

In January of 1981, Maria sold two paintings by her late husband for $20,000.00 and $15,000.00 respectively. She invested the proceeds into two certificates of deposit with First Federal Savings and Loan (FFSL). In December 1982, Maria transferred those two certificates of deposit into two joint tenancy certificates of deposit wherein she and Brooks were joint tenants with rights of survivorship. These certificates of deposit, which were rolled over every six months, comprised a source of interest income upon which Maria and Brooks lived. This interest income plus Maria's social security check were supplemented by Brooks' earnings to cover the monthly living expenses of Maria and Brooks.

In February 1984, FFSL informed Maria and Brooks that they were discontinuing that particular class of certificates of deposit. Brooks reinvested the proceeds of the $20,000.00 certificate of deposit into a joint tenancy savings certificate at Nevada First Thrift. The savings certificate and signature card at NFT list the title holders as "Meyer-Kassel, Maria or Brooks, H. Wm." The "joint tenancy" box on the signature card was checked by Brooks at the time he opened the account. The language "with right of survivorship" does not appear anywhere on the savings certificate or the signature card.

In March 1984, upon learning that the $20,000.00 savings certificate at NFT was not federally insured, Maria became upset. She wanted Brooks to transfer the $20,000.00 savings certificate to a federally insured institution, and she refused to allow Brooks to move the proceeds from the $15,000.00 certificate of deposit at FFSL to NFT.

On April 3, 1984, Brooks suggested implementing formal guardianship proceedings for Maria with her sister, Hannah. Hannah strongly opposed such an idea. In response, Brooks set a

deadline that Hannah must take over Maria's physical and financial needs by April 13, or he would notify the Nevada Division of Welfare. At that point in time, Hannah, age eighty, was recuperating from a double knee operation, needed a walker to get around, and could not drive a car.

On April 11, Maria went to NFT and requested that the savings certificate be transferred into her name alone. Maria surrendered her certificate without signing the back of the certificate and without signing the associated signature cards.

Contrary to Brooks' claim, there is substantial evidence to support the trial court's declaration that Maria effectuated elimination of Brooks' name from the certificate, even though she did not endorse the old certificate and sign the signature cards. Maria did surrender the certificate to NFT. Maria did express to NFT her intention to change the certificate to her own name, something she clearly had the right to do. The money was Maria's. The bank actually transferred the funds to Maria's name alone.

The certificate surrendered by Maria, Certificate No. 34082 was accepted by NFT and cancelled with a stamp, "Replaced with 34090." A new certificate, No. 34090, was issued in the name of Maria only. We note that the surrendered certificate is described on its face as a "non-negotiable" savings certificate and that no endorsement requirement for transfer appears on the face of the document. Normal bank procedures involve signing these kinds of certificates on their reverse side together with execution of signature cards, but this does not mean that a transfer and reissuance should be invalidated merely because these formalities are not completed, after the fact. After this was done NFT wrote a letter to Maria asking that she come in and sign necessary documents. When Maria left the bank, she left with the understanding that her intent had been accomplished; and it was in fact accomplished by the issuance of the new certificate. A signature is a mere indication of assent. The trial judge was certainly justified in accepting the bank's transfer and issuance of a new certificate as being viable, notwithstanding its request for the additional formality of a signature.

There is substantial evidence to support the trial court's conclusion and decision that the amount in deposit represented by Certificate No. 34090 should be awarded to Maria's estate. The judgment of the trial court is affirmed.